E. LEIF REID
State Bar No. 5750
KRISTEN L. MARTINI
State Bar No. 11272
NICOLE SCOTT
State Bar No. 13757
LEWIS ROCA ROTHGERBER CHRISTIE LLP
50 West Liberty Street, Suite 410
Reno, NV 89501-1922
Tel: 775.823.2900
Fax: 775.823.2929
E-mail: lreid@lrrc.com
kmartini@lrrc.com
nscott@lrrc.com

*Attorneys for Plaintiff Crown Beverages, Inc.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| CROWN BEVERAGES, INC., a Nevada corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SIERRA NEVADA BREWING CO., a California corporation,<br><br>Defendant. | Case No. 3:16-cv-00695-MMD-VPC<br><br>**STIPULATION AND ORDER FOR LEAVE TO FILE FIRST SUPPLEMENTAL COMPLAINT PURSUANT TO FED. R. CIV. P. 15(d)** |

Plaintiff Crown Beverages, Inc. ("Crown"), through counsel of Lewis Roca Rothgerber Christie LLP, and Defendant Sierra Nevada Brewing Co. ("Sierra Nevada"), through counsel of Snell & Wilmer L.L.P. and McDermott Will & Emery LLP., hereby stipulate and agree to Crown's filing of its First Supplemental Complaint, pursuant to Federal Rule of Civil Procedure 15(d), a true and accurate copy of which is attached as **Exhibit 1**. In support of this stipulation, while Sierra Nevada disputes the facts as alleged, the parties agree that events have occurred between the parties since Crown's filing of the original Complaint on November 4, 2016, and that these events concern the same subjects raised in the original Complaint.

/ / /

/ / /

/ / /

100074456_1 100037684_1

1    The parties further agree that Sierra Nevada will be provided 14 days from the entry of the
2    Order on this Stipulation to respond to the First Supplemental Complaint.
3    IT IS SO STIPULATED.

Dated: December 7, 2016

LEWIS ROCA ROTHGERBER
CHRISTIE LLP

By: /s/ E. Leif Reid
E. Leif Reid, Bar No. 5750
Kristen L. Martini, Bar No. 11272
Nicole Scott, Bar No. 13757
50 West Liberty Street, Suite 410
Reno, Nevada 89501

*Attorneys for Plaintiff
Crown Beverages, Inc.*

Dated: December 7, 2016

McDERMOTT WILL & EMERY LLP

By: /s/ Richard K. Welsh
Richard K. Welsh (*pro hac vice*)
2049 Century Park East, Suite 3800
Los Angeles, California 90067

*Attorneys for Defendant
Sierra Nevada Brewing Co.*

**ORDER**

**IT IS SO ORDERED.**

/s/ Valerie P. Cooke
United States Magistrate Judge
DATED: December 12, 2016

# EXHIBIT 1 – FIRST SUPPLEMENTAL COMPLAINT

# EXHIBIT 1 – FIRST SUPPLEMENTAL COMPLAINT

1  E. LEIF REID
   State Bar No. 5750
2  KRISTEN L. MARTINI
   State Bar No. 11272
3  NICOLE SCOTT
   State Bar No. 13757
4  LEWIS ROCA ROTHGERBER CHRISTIE LLP
   50 West Liberty Street, Suite 410
5  Reno, NV 89501-1922
   Tel: 775.823.2900
6  Fax: 775.823.2929
   E-mail: lreid@lrrc.com
7         kmartini@lrrc.com
          nscott@lrrc.com
8
   *Attorneys for Plaintiff Crown Beverages, Inc.*
9

10              UNITED STATES DISTRICT COURT

11                   DISTRICT OF NEVADA

12  CROWN BEVERAGES, INC., a Nevada        Case No. 3:16-cv-00695-MMD-VPC
    corporation,
13                                          FIRST SUPPLEMENTAL COMPLAINT
                        Plaintiff,
14
        vs.
15
    SIERRA NEVADA BREWING CO., a
16  California corporation,

17                      Defendant.

18
19      Plaintiff CROWN BEVERAGES, INC. ("Crown"), by and through its counsel, Lewis

20  Roca Rothgerber Christie LLP, complains against Defendants as follows:

21                   **PARTIES, JURISDICTION, AND VENUE**

22      1.   Plaintiff Crown is a corporation organized and existing under the laws, and a

23  citizen, of the State of Nevada.

24      2.   Defendant SIERRA NEVADA BREWING CO. ("Sierra Nevada") is a corporation

25  organized and existing under the laws, and a citizen, of the State of California, doing business

26  throughout the State of Nevada as a "supplier" of alcoholic beverages within the meaning of NRS

27  Chapter 369 and 597.

28  ///

100051278_3

3. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. section 1332(a), and section 1441(a), because complete diversity exists between the parties and the amount in controversy exceeds $75,000, exclusive of costs and interests.

4. Venue is proper in this Court pursuant to 28 U.S.C. sections 1391(b)(2), and sections 1441 and 1446(a). This action was originally filed in the Second Judicial District Court, Washoe County, Nevada.

## FACTUAL ALLEGATIONS

5. At all times relevant hereto, Crown has been a licensed wholesaler and importer of alcoholic beverages in the State of Nevada pursuant to NRS Chapters 369 and 597.

6. At all times relevant hereto, Crown was a "wholesale dealer" or "wholesaler" within the definitions and meaning of those terms as used in NRS Chapters 369 and 597.

7. Crown is the holder of exclusive franchises with suppliers for the exclusive importation and further wholesale distribution of liquors within the State of Nevada as authorized and recognized under NRS Chapters 369 and 597.

8. At all times relevant hereto, Sierra Nevada has been registered with the Nevada Department of Taxation and holds a current Certificate of Compliance as a "supplier" of alcoholic beverages.

9. As a registered "supplier" with the Nevada Department of Taxation, Sierra Nevada promises "to faithfully comply with all laws of the State of Nevada pertaining to the sale and shipping of liquors into Nevada . . . ."

10. In or about December 1, 1986, Crown entered into a distributor agreement with Sierra Nevada (hereinafter the "Agreement") to serve as its exclusive importer/wholesaler in northern Nevada.

11. Under the Agreement, Crown was granted the exclusive right to import and distribute the following products in its territory: Pale Ale, Porter, Stout, Celebration Ale, Draught Ale, Bigfoot Ale, and Summerfest Beer.

12. Thereafter, Sierra Nevada authorized Crown the exclusive right to distribute additional brands within Crown's territory by executing multiple Liquor Wholesaler Designation

1  and Acceptance Forms (Form "LT 08") that were filed with the Nevada Department of Taxation.
2  Collectively, all of the products for which Crown has been designated the exclusive right to import
3  and distribute, either as expressly included in the Agreement or through a subsequent LT 08, are
4  referred to herein as "Crown's Products."

5  　　　　13.　　At all times relevant hereto, Crown fully and/or substantially performed under its
6  franchise agreement with Sierra Nevada and pursuant to NRS Chapters 369 and 597.

7  　　　　14.　　Under NRS 597.150(1), before a supplier can terminate a franchise with a
8  wholesaler,

> a supplier must, at least 90 days before he or she terminates or refuses to continue any franchise with a wholesaler or causes a wholesaler to resign from any franchise, send a notice by certified mail, return receipt requested, to the wholesaler. The notice must include:
>
> (a) The reason for the proposed action and a description of any failure of the wholesaler to comply with the terms, provisions and conditions of the franchise alleged by the supplier pursuant to NRS 597.160; and
>
> (b) A statement that the wholesaler may correct any such failure within the period prescribed in NRS 597.160.

16  　　　　15.　　Under NRS 597.160(2), "a supplier shall not unilaterally terminate or refuse to
17  continue any franchise with a wholesaler or cause a wholesaler to resign from that franchise unless
18  the supplier has first established good cause for that termination, noncontinuance or causing of
19  that resignation." "Good cause" is defined in NRS 597.133.

20  　　　　16.　　And, under NRS 597.160(3), "[a] wholesaler may, within 60 days after he or she
21  receives a notice required pursuant to NRS 597.155, correct any failure to comply with the terms,
22  provisions and conditions of the franchise alleged by the supplier."

23  　　　　17.　　In a letter dated October 26, 2016, Sierra Nevada informed Crown it was ending
24  the "business relationship." Further, the letter provided that "[a]t this point we demand that
25  [Crown] initiate discussions to sell distribution rights in [Crown's] territory."

26  　　　　18.　　Sierra Nevada's October 26, 2016, letter purported to unilaterally terminate
27  Crown's franchise without any good cause whatsoever, and without the required notice and
28  opportunity to cure as required under Nevada law.

100051278_3                                     3

19. Sierra Nevada's conduct is in violation of NRS Chapters 369 and 597, constitutes a breach of the Agreement, and is a violation of Sierra Nevada's fiduciary duties owed to Crown.

20. As a result, Crown filed a complaint and application for temporary restraining order and motion for preliminary injunction in the Second Judicial District Court in Washoe County on November 4, 2016.

21. On or about November 9, 2016, Sierra Nevada sent a new letter to Crown "to clarify ifs October 2016, letter." In this letter, Sierra Nevada stated that "Sierra Nevada did not purport terminate its December 1, 1986 Distribution Agreement with Crown . . . in the October 26th letter. Rather, Sierra Nevada asked Crown to sell its distribution rights to an acceptable distributor . . . ."

22. Sierra Nevada further stated in its November 9, 2016, letter that, "[b]ecause Crown misread Sierra Nevada's October 26th letter and hurriedly sued Sierra Nevada less than one week later, Sierra Nevada has no choice but to provide Crown with this formal 90-day notice of termination."

23. As part of the November 9, 2016, letter, Sierra Nevada lists six issues "with Crown's past and on-going conduct" as alleged bases for its termination.

24. Upon receipt of this letter, counsel for Crown reached out to Sierra Nevada's counsel and asked if the parties could meet to resolve the dispute and to cure the issues described in Sierra Nevada's November 9, 2016 letter. This meeting occurred on November 15, 2016.

25. At the November 15, 2016, meeting, Crown reminded Sierra Nevada that a supplier must provide the ability to cure, and therefore the purpose of the meeting was to determine how Crown could cure any alleged deficiencies.

26. Sierra Nevada agreed with Crown that most of the six issues had been resolved and were not current issues; instead Sierra Nevada's primary issue was the alleged behavior of one of Crown's owners.

27. As a result of this meeting, Crown drafted a letter proposing a cure, and sent to Sierra Nevada on November 16, 2016. In this letter, Crown stated "[i]n our discussion, [Sierra

1  Nevada] made clear that the primary basis for Sierra Nevada's termination notice was Sierra
2  Nevada's communication with [one of Crown's owners,] Paul Bond."

3  28.  Crown then stated in its letter under NRS 597.160(3), it was exercising its right to
4  cure this issue and made specific proposals, including that Crown would filter all communication
5  with Sierra Nevada through its other owner or its sales manager.

6  29.  Crown did not receive a response from Sierra Nevada until November 23, 2016,
7  when counsel stated that it was still "formulating a response."

8  30.  In the evening of November 28, 2016, nearly two weeks after Crown submitted its
9  proposed cure, Sierra Nevada sent its response claiming Crown's proposed cure was inadequate.
10 In its response, Sierra Nevada revived all of the six issues, and added new allegations, including
11 formulating a new distributor scoring metric that was implemented in October 2016, at or about
12 the time of Sierra Nevada's initial communication to Crown regarding termination of the
13 franchise.  Sierra Nevada had never shared any information about this new metric with Crown,
14 had never asked for Crown to agree to the new metric, and had never shared any of its supporting
15 data.

**FIRST CLAIM FOR RELIEF**

**(Breach of Plaintiff's Statutory Rights—NRS 597.120, *et seq.*)**

18  31.  Plaintiff incorporates herein the foregoing paragraphs as if fully set forth.

19  32.  NRS 597.160 prohibits suppliers from unilaterally terminating or refusing to
20 continue franchises with Nevada wholesalers absent good cause.  Under Nevada law, a supplier
21 may not unilaterally end its business relationship with a wholesaler and mandate that a wholesaler
22 sell its exclusive franchise rights to distribute a supplier's brands to another wholesaler.

23  33.  Sierra Nevada violated NRS Chapter 597 in its October 26, 2016 letter to Crown
24 when it unilaterally discontinued its business relationship with Crown and demanded that Crown
25 sell its franchise in its brands to another wholesaler.

26  34.  Further, NRS 597.155 requires that suppliers provide at least 90 days' notice of any
27 such purported termination.  And, under NRS 597.160, wholesalers may, within 60 days of
28

100051278_3                                    5

1 receiving any such notice of termination, affect a cure of any alleged failure to comply with the
2 terms, provisions and conditions of the franchises.

3    35.   Crown has a valid and enforceable exclusive franchise agreement with Sierra
4 Nevada. In violation of NRS 597.155 and NRS 597.160, with its October 26, 2016 letter, Sierra
5 Nevada has unilaterally and without good cause purported to terminate the franchise.

6    36.   In violation of NRS 597.155, with its October 26, 2016 letter, Sierra Nevada did
7 not provide the required 90-day notice prior to terminating a franchise.

8    37.   In violation of NRS 597.160(3), with its October 26, 2016 letter, Sierra Nevada did
9 not provide the required 60-day opportunity to "correct any failure to comply with the terms,
10 provisions and conditions of the franchise alleged by the supplier" in a notice received pursuant to
11 NRS 597.155.

12    38.   In violation of NRS 597.155 and NRS 597.160, with its November 9, 2016 letter,
13 Sierra Nevada has purported to terminate its franchise agreement with Crown without good cause
14 and in retaliation for Crown's filing of a complaint to protect Crown's statutory rights.

15    39.   As a proximate result of Sierra Nevada's wrongful and unlawful acts, Crown has
16 suffered, or will suffer, lost profits, loss of market share, and loss of goodwill in an amount in
17 excess of $10,000.

18    40.   Furthermore, as a result of Sierra Nevada's wrongful and unlawful acts, Crown has
19 been forced to obtain the services of counsel to prosecute this action and is entitled to an award of
20 attorney fees and costs incurred herein pursuant to NRS 597.170(1).

21                    **SECOND CLAIM FOR RELIEF**
22                         **(Breach of Contract)**

23    41.   Plaintiff incorporates herein the foregoing paragraphs as if fully set forth.

24    42.   Crown entered into a valid and existing contract with Sierra Nevada to act as Sierra
25 Nevada's exclusive wholesaler/importer for Crown's Products within Crown's territory within the
26 state of Nevada in accordance with NRS Chapters 369 and 597.

27    43.   Crown performed fully under the franchise agreement and pursuant to NRS
28 Chapters 369 and 597.

44. Sierra Nevada breached the franchise agreement by, among other things, purporting to terminate the Agreement without good cause and requiring Crown to divest itself of its exclusive right to distribute Sierra Nevada's products in northern Nevada.

45. As a proximate result of Sierra Nevada's wrongful and unlawful acts, Crown has suffered, or will suffer, lost profits, loss of market share, and loss of goodwill in an amount in excess of $10,000.

46. Furthermore, as a result of Sierra Nevada's wrongful and unlawful acts, Crown has been forced to obtain the services of counsel to prosecute this action and is entitled to an award of attorney fees and costs incurred herein pursuant to NRS 18.010(1) and NRS 597.170(1).

## THIRD CLAIM FOR RELIEF

**(Contractual Breach of the Covenant of Good Faith and Fair Dealing)**

47. Plaintiff incorporates herein the foregoing paragraphs as if fully set forth.

48. Crown entered into a valid and existing contract with Sierra Nevada to act as Sierra Nevada's exclusive wholesaler/importer for Crown's Products within Crown's territory within the state of Nevada in accordance with NRS Chapters 369 and 597.

49. The implied covenant of good faith and fair dealing is required in every contract under Nevada law, and, therefore, Sierra Nevada owes a duty of good faith to Crown.

50. Sierra Nevada breached that duty by performing in a manner that is unfaithful to the purpose of the contract when it purported to terminate the Agreement with its October 26, 2016, letter, without notice, without good cause, and without providing an opportunity to correct any alleged deficiencies. Sierra Nevada's representatives and agents have also disparaged Crown in the market, causing damage to its reputation and ability to continue its business. Thus, Crown's justified expectations were denied.

51. Sierra Nevada also breached that duty of the implied covenant of good faith and fair dealing by performing in a manner that is unfaithful to the purpose of the contract when it purported to terminate the Agreement with its November 9, 2016, letter, without good cause.

52. As a proximate result of Sierra Nevada's wrongful and unlawful acts, Crown has suffered, or will suffer, lost profits, loss of market share, and loss of goodwill in an amount in excess of $10,000.

53. Furthermore, as a result of Sierra Nevada's wrongful and unlawful acts, Crown has been forced to obtain the services of counsel to prosecute this action and is entitled to an award of attorney fees and costs incurred herein pursuant NRS 18.010(1).

### FOURTH CLAIM FOR RELIEF

**(Tortious Breach of the Covenant of Good Faith and Fair Dealing)**

54. Plaintiff incorporates herein the foregoing paragraphs as if fully set forth.

55. Crown entered into a valid and existing contract with Sierra Nevada to act as Sierra Nevada's exclusive wholesaler/importer for Crown's Products within Crown's territory within the state of Nevada in accordance with NRS Chapters 369 and 597.

56. The implied covenant of good faith and fair dealing is required in every contract under Nevada law, and, therefore, Sierra Nevada owes a duty of good faith to Crown.

57. Furthermore, as parties to a franchise agreement, a special element of reliance existed between Sierra Nevada and Crown, whereby Sierra Nevada was in an entrusted position and Crown specially relied upon Sierra Nevada to honor its obligations and deal fairly and in good faith with respect to the franchise agreement.

58. As a result of the foregoing special element of reliance, Sierra Nevada, as a franchisor, was under a legal duty, independent of the Agreement, to deal fairly and in good faith with Crown. Sierra Nevada's business disparagement and attempts to force Crown to sell its franchise rights similarly violate these special duties under Nevada law.

59. Sierra Nevada breached these duties by purportedly terminating the Agreement without good cause, without notice, and without an opportunity to cure, and Crown's justified expectations were thus denied.

60. As a proximate result of Sierra Nevada's wrongful and unlawful acts, Crown has suffered, or will suffer, lost profits, loss of market share, and loss of goodwill in an amount in excess of $10,000.

61. Furthermore, as a result of Sierra Nevada's wrongful and unlawful acts, Crown has been forced to obtain the services of counsel to prosecute this action and is entitled to an award of attorney fees and costs incurred herein pursuant to NRS 18.010(1).

62. Additionally, Sierra Nevada's conduct has been committed with malice, oppression, and fraud, and therefore, Crown requests that punitive/exemplary damages be assessed against Sierra Nevada.

## FIFTH CLAIM FOR RELIEF

### (Intentional Interference with Prospective Economic Advantage)

63. Plaintiff incorporates herein the foregoing paragraphs as if fully set forth.

64. Prospective contractual relationships existed between Crown and its customers in its territory for the continuous and perpetual supply of Crown's Products.

65. Sierra Nevada knows of these relationships and entered into an exclusive wholesale franchise with Crown, thereby allowing Crown to fulfill its prospective contractual obligations.

66. Sierra Nevada knows of these relationships, and without good cause or notice, purportedly terminated Crown's franchise agreement.

67. Sierra Nevada has no privilege or justification for preventing these relationships.

68. As a proximate result of Sierra Nevada's wrongful and unlawful acts, Crown has suffered, or will suffer, lost profits, loss of market share, and loss of goodwill in an amount in excess of $10,000.

69. Furthermore, as a result of Sierra Nevada's wrongful and unlawful acts, Crown has been forced to obtain the services of counsel to prosecute this action and is entitled to an award of attorney fees and costs incurred herein pursuant to NRS 18.010(1).

## SIXTH CLAIM FOR RELIEF

### (Intentional Interference with Contractual Relations)

70. Plaintiff incorporates herein the foregoing paragraphs as if fully set forth.

71. Crown has and had valid and existing contracts with its customers for the distribution of Crown's Products.

72. Sierra Nevada is aware of these contracts.

73. Sierra Nevada committed intentional acts intended or designed to disrupt the contractual relationships between Crown and its customers in its territory by unilaterally and without good cause, notice, or an opportunity to cure, purporting to terminate the Agreement.

74. As a proximate result of Sierra Nevada's wrongful and unlawful acts, Crown has suffered, or will suffer, lost profits, loss of market share, and loss of goodwill in an amount in excess of $10,000.

75. Furthermore, as a result of Sierra Nevada's wrongful and unlawful acts, Crown has been forced to obtain the services of counsel to prosecute this action and is entitled to an award of attorney fees and costs incurred herein pursuant to NRS 18.010(1).

## SEVENTH CLAIM FOR RELIEF

### (Declaratory Relief)

76. Plaintiff incorporates herein the foregoing paragraphs as if fully set forth.

77. A dispute has arisen and an actual controversy now exists between Crown and Sierra Nevada regarding the rights, liabilities, and obligations of Crown and Sierra Nevada under NRS Chapter 597.

78. A declaration of rights is necessary and appropriate at this time in order for the parties to ascertain their rights, obligations, and liabilities, and because no adequate remedy other than prayed for exists by which the rights of the parties may be ascertained.

79. Plaintiff is informed and believes, and on this basis alleges, that Sierra Nevada will unlawfully terminate the Agreement without good cause unless enjoined and restrained by the Court, and Plaintiff does not have an adequate remedy at law.

80. Crown requests a judicial declaration that Sierra Nevada is improperly terminating the Crown franchise without good cause.

**WHEREFORE,** Crown respectfully requests the following relief:

1. For preliminary and permanent injunctive relief, enjoining Sierra Nevada from terminating Crown's franchise agreements without good cause and enjoining Sierra Nevada from supplying Crown's Products to other wholesalers within Crown's territory within the State of Nevada, in violation of NRS Chapter 597;

100051278_3

10

2. For a declaration that Sierra Nevada has violated NRS Chapter 597 by purporting to force Crown to sell its franchise and by refusing to continue its franchise with Crown without good cause and without otherwise complying with NRS 597.155 and NRS 597.160;

3. For judgment against Sierra Nevada for specific performance under its franchise agreement with Crown;

4. For judgment against Sierra Nevada in excess of $10,000, according to proof;

5. For attorney fees and costs pursuant to NRS 18.010(1) and NRS 597.170(1); and

6. For such other and further relief as the Court may deem just and proper.

## AFFIRMATION

I declare under penalty of perjury under the law of the State of Nevada that the foregoing document does not contain the Social Security number of any person.

DATED this ___ day of December, 2016.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By: _____
E. Leif Reid, SBN 5750
Nicole Scott, SBN 13757
50 West Liberty Street, Suite 410
Reno, Nevada 89501

*Attorneys for Plaintiff Crown Beverages, Inc.*