UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CROWN BEVERAGES, INC., a Nevada corporation,<br>    Plaintiff,<br> v.<br>SIERRA NEVADA BREWING CO., a California corporation; Does I through X, inclusive,<br><br>Defendants. | Case No. 3:16-cv-00695-MMD-VPC<br><br>ORDER<br><br>(Def's Motion to Dismiss – ECF No. 25; Def's Objections – ECF No. 71.) |

**I. SUMMARY**

This case centers on a contract dispute between an out of state brewer and a Nevada distributer. Before the Court are a Motion to Dismiss ("Motion") filed by Defendant Sierra Nevada Brewing Co. ("Sierra Nevada") (ECF No. 25) and Objections to the Magistrate Judge's March 1, 2016, order on several discovery issues ("Objections") (ECF No. 71) filed by Plaintiff Crown Beverages, Inc ("Crown"). The Court has reviewed Crown's response (ECF No. 38) and Sierra Nevada's reply (ECF No. 40) to the Motion to Dismiss, as well as Sierra Nevada's response to the Objections (ECF No. 77).

For the reasons discussed below, Sierra Nevada's Motion is granted in part and denied in part, and Crown's Objections are overruled.

**II. BACKGROUND**

 **A. Nevada's Alcohol Distribution Regulatory Scheme**

NRS § 597.120 *et seq* governs the relationship between alcohol producers (in this case an out of state brewery) and wholesalers in Nevada. Relevant to this case, Nevada

requires a brewer to give a wholesaler 90 days' notice before terminating a franchise agreement and also requires the brewer to inform the wholesaler of the reason for the termination. NRS § 597.150(1). The wholesaler is then allowed 60 days to attempt to correct the reason for the termination. NRS § 597.160(3). Furthermore, a supplier must establish good cause for termination. NRS § 597.160(2). Good cause is defined as:

1. Failure by a wholesaler to comply substantially with essential and reasonable requirements imposed on him or her by a supplier, or sought to be imposed by a supplier, if the requirements are not discriminatory as compared with requirements imposed on other similarly suited wholesalers either by their terms or in the manner of their enforcement.

2. Bad faith by the wholesaler in carrying out the terms of the franchise agreement.

NRS § 597.144.

### B. The Relationship Between Sierra Nevada and Crown

The following facts are based on the allegations in the Amended Complaint (ECF No. 16) and on exhibits attached to Crown's Motion for Preliminary Injunction (ECF No. 14). Crown is a licensed Nevada alcohol wholesaler and importer, and is a registered supplier of alcoholic beverages. (ECF No. 16 ¶¶ 5,6,8.) On December 1, 1986, Crown entered into an agreement ("Distribution Agreement") with Sierra Nevada making Crown the exclusive importer and wholesaler of Sierra Nevada's products in northern Nevada. (*Id.* ¶ 10.)

On October 26, 2016, Sierra Nevada sent Crown a letter ("October Letter") indicating that Sierra Nevada wished to end the business relationship due to Crown's "harassment and bullying tactics directed toward our employees" and asking Crown to "initiate discussions to sell [Crown's] distribution rights." (*Id.* ¶ 17; ECF No. 14-4.) On November 3, 2016, Crown filed suit in state court, alleging that Sierra Nevada has violated NRS § 597.120 *et seq* and committed several torts. (ECF No. 1-1.)

On November 9, 2016, Sierra Nevada sent Crown a second letter ("November Letter") in which it stated: "Sierra Nevada did not purport to terminate its ["Distribution Agreement"] with Crown," in the October Letter, but now was asserting several bases for

termination and providing Crown with the 90 day statutorily required notice. (ECF No. 16 ¶¶ 22, 23; ECF No. 14-5.) Sierra Nevada enumerated several grounds for terminating the Distribution Agreement, including:

> (1) submitting false and misleading accounting reports, including overbilling […]; (2) failure to provide a competitive level of service which has drawn complaints from retail accounts raising issues with Crown's performance; (3) ongoing retail execution that fails to meet Sierra Nevada's brand standards […]; (4) below average 2016 execution performance on key brand building executables […]; (5) improper care and oversight of Sierra Nevada's product, including failure to properly refrigerate product and to ensure product was maintained within expiration parameters; and, most importantly, (6) abusive and unprofessional conduct at meetings held with Sierra Nevada people, including one which during [Crown President Paul Bond was] evidently intoxicated and brandished a firearm to threaten them.

(ECF No. 14-5 at 3.)

The parties met on November 15, 2016, in an attempt to resolve the issues raised in the November Letter. (*Id.* ¶ 24.) After the meeting, Crown sent a letter proposing steps it would take to cure the problems identified by Sierra Nevada. (*Id.* ¶ 28.) On November, 28, 2016, Sierra Nevada responded and stated that Crown's proposal was inadequate. (*Id.* ¶ 30.) In its response, Sierra Nevada also introduced, for the first time, a scoring metric which it claimed also justified its decision. (*Id.*)

Sierra Nevada removed the suit to this Court on November 30, 2016. (ECF No. 1.) Crown filed an Amended Complaint on December 14, 2016 (ECF No. 16), and Sierra Nevada filed its Motion to Dismiss on December 27, 2016 (ECF No. 25). Sierra Nevada argues that Crown is attempting to shoehorn several tort claims into their contract claims, and thereby impermissibly "turn [their] contract disputes into tort disputes with the specter of punitive damages." (ECF No. 25 at 6.)

### III. MOTION TO DISMISS

#### A. Legal Standard

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8

3

does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 US 662, 678 (2009) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 679. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged–but not shown–that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

A complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (*quoting Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989) (emphasis in original)).

**B.    Discussion**

Sierra Nevada does not challenge Crown's first (violation of NRS § 597.120 *et seq*) or second (breach of contract) claims for relief. Instead, Sierra Nevada argues that Crown has failed to state valid claims for breach of the implied covenant of good faith and fair

4

dealing (based on both contract and tort theories), intentional interference with contract, intentional interference with prospective economic advantage, and declaratory relief.

### 1. Implied Covenant of Good Faith and Fair Dealing

Under Nevada law, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and execution." *A.C. Shaw Constr. v. Washoe County*, 784 P.2d 9, 9 (Nev. 1989) (quoting Restatement (Second) of Contracts § 205). To prevail on a breach of implied covenant of good faith and fair dealing claim, a plaintiff must show that (1) plaintiff and defendant were parties to a contract, (2) the defendant owed a duty of good faith and fair dealing to the plaintiff, (3) the defendant breached his duty by performing in a manner unfaithful to the purpose of the contract, and (4) the plaintiff's justified expectations were denied. *See Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 2008). Damages may be awarded against a defendant that performs a contract in a manner that is unfaithful to the contract's purpose or where a defendant deliberately contravenes the intention and spirit of the contract thus denying plaintiff's justified expectations. *Morris v. Bank of Am. Nevada*, 886 P.2d 454, 457 (Nev. 1994); *Hilton Hotels v. Butch Lewis Prods.*, 808 P.2d 919, 923 (Nev. 1991).

In "rare and exceptional" cases a breach of the implied covenant may give rise to tort liability. *Great Am. Ins. Co. v. Gen. Builders, Inc.* 934 P.2d 257, 263 (Nev. 1997). Such liability exists where there is a "special relationship" between the parties, such that one party is in a "superior or entrusted position" and the other a weaker one, and the party in the superior position engaged in "grievous and perfidious misconduct." *Id*.

Crown alleges Sierra Nevada breached the covenant by sending the two letters purporting to end the Distribution Agreement without notice, good cause, or opportunity to correct any deficiencies, and by disparaging Crown in the market. (ECF No. 16 ¶¶ 50, 51.) Crown further alleges that because the parties had a franchise agreement, Crown was reliant on Sierra Nevada in such a way that Sierra Nevada's breach of the covenant also gives rise to tort liability. (*Id.* ¶¶ 57, 58.) Sierra Nevada argues that these claims are duplicative of Crown's breach of contract claims, and that the claims rely on a breach of

5

the *express* terms of the contract rather than any *implied* obligations. Sierra Nevada also argues, even if the claims were not duplicative, Crown has not alleged any behavior that could plausibly qualify as grievous or perfidious. In response, Crown clarifies that its claims are additionally supported by its allegations that Sierra Nevada unreasonably rejected its plan to cure its performance defects, disparagement of Crown, communication of confidential pricing information, and shopping for replacement wholesalers. (ECF No. 38 at 13-14 (citing ECF No. 16 ¶¶ 25-30, 50, 58.).)

As an initial matter, Sierra Nevada correctly points out that any allegations that Sierra Nevada approached other companies and divulged confidential information do not appear in the Amended Complaint. Rather, those allegations appear in Crown's November 16, 2016, letter to Sierra Nevada, which was referenced in the Amended Complaint, but not in such a way that made clear Crown intended to incorporate those specific allegations into its breach of the covenant of good faith and fair dealing claims. The only allegations in the Amended Complaint that support Crown's breach of the implied covenant of good faith and fair dealing claims are that 1) Sierra Nevada attempted to improperly terminate Crown in its October and November letters and 2) Sierra Nevada disparaged Crown in the market.

Still, the Court finds that these allegations are sufficient to support a contract based claim for breach of the implied covenant of good faith and fair dealing. Crown's allegations, if taken as true, show that Sierra Nevada may have acted in a manner that was unfaithful to the purpose of the Distribution Agreement even as it attempted to comply with the requirements for terminating its relationship with Crown.

The Court further finds that that Crown has alleged a sufficient basis from which a factfinder could conclude that this is a "rare and exceptional" case of "grievous and perfidious misconduct" that would support a claim for tortious liability. The Nevada Supreme Court has expressly recognized the relationship between "franchisees and franchisers" to be among the special relationships in which tort liability may arise. *See Ins. Co. of the W. v. Gibson Tile Co.*, 134 P.3d 698, 702 (Nev. 2006). Nevada has, apparently,

decided the relationship between a brewer and a distributer is such a relationship. Nevada's alcohol regulatory scheme explicitly purports to "protect locally owned and operated business[s]" from "economic and coercive control by nonresident suppliers of alcoholic beverages." NRS § 597.190. It characterizes the relationship between brewer and distributer as a franchise relationship. *See* NRS § 597.155(1); NRS § 597.160. There is little case law explaining what kind of conduct does and does not qualify as "grievous and perfidious" in these circumstances, but question about the severity of misconduct are typically questions for fact finders. *See, e.g.*, *UNL State, Univ. & Cmty. Coll. Sys. v. Sutton*, 103 P.3d 8, 20 (Nev. 2004) (trial court did not err in denying motion for directed verdict on question of whether conduct was grievous and perfidious). Crown has satisfied its pleading requirements by alleging bad faith acts on Sierra Nevada's part in the context of a qualifying relationship.

For these reasons, Sierra Nevada's Motion is denied with respect to Crown's contract and tort based claims for breach of the implied covenant of good faith and fair dealing.

### 2. Intentional Interference with Contract

To support a claim for the tort intentional interference with contractual relations, a plaintiff must establish: 1) a valid and existing contract; 2) the defendant's knowledge of the contract; 3) intentional acts intended or designed to disrupt the contractual relationship; 4) disruption of the contract; and 5) damage as a result. *J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003). The "heart" of an intentional interference with contract claim is proof of "*intentional acts by Defendant* intended or designed to disrupt Plaintiff's contractual relations." *Id.* at 1268 (emphasis in original). *See also Imperial Ice Co. v. Rossier*, 112 P.2d 631, 633 (Cal. 1941) (Traynor, J.) (giving an overview of the development and nature of the tort).

Sierra Nevada argues that there are several problems with Crown's claim. First, Sierra Nevada argues that the sole basis for Crown's claim is the alleged breach of its own agreement, which may create liability in contract but does not create parallel lability in tort.

Second, Sierra Nevada argues that even if the claim were theoretically sound, it is still plead with vague assertions and legal conclusions — exemplified by the fact that Crown has not identified any specific contracts which were affected. Lastly, Sierra Nevada argues that Crown has not plead any facts that would allow a juror to conclude that it *intentionally* disrupted any third-party contracts.

The Court agrees that Crown fails to state a claim for intentional interference with contract. Crown has not pled any facts that would permit the Court to reasonably infer that Sierra Nevada intended to disrupt third-party contracts, rather than simply ending its own. While Sierra Nevada's acts may have in fact affected third party contracts, Sierra Nevada is correct that damages resulting from its acts may be relevant to a calculation of damages for Crown's statutory and breach of contract claims, rather than the basis for a separate tort.

Therefore, Sierra Nevada's Motion is granted and the claim is dismissed.

### 3. Intentional Interference with Prospective Economic Advantage

To show the related tort of interference with prospective economic advantage, a plaintiff must establish: 1) a prospective contractual relationship between the plaintiff and a third party; 2) the defendant's knowledge of this prospective relationship; 3) the intent to harm the plaintiff by preventing this relationship; 4) the absence of privilege or justification by the defendant; and 5) actual harm to the plaintiff as a result. *Custom Teleconnect, Inc. v. Int'l Tele-Servs., Inc.*, 254 F. Supp. 2d 1173, 1180–81 (D. Nev. 2003).

Sierra Nevada argues that this claim similarly relies on vague allegations of prospective contractual relationships in order to repackage the breach of contract claim as a tort claim. The Court again agrees. Crown simply alleges that it generally has prospective contractual relationships with customers in its territory. It alleges the same damages it alleged for the breach of contract claim, and again it has not alleged any facts for the Court to reasonably infer that Sierra Nevada intended to disrupt third-party business opportunities rather than simply end its relationship with Crown. Crown's conclusory allegations do not permit the Court to infer more than the mere possibility of misconduct.

For these reasons, Sierra Nevada's Motion is granted and Crown's intentional interference with prospective economic advantage claim is dismissed.

### 4. Declaratory Relief

Crown's claim for declaratory relief asks the Court to declare that Sierra Nevada is improperly terminating its franchise agreement without good cause. Sierra Nevada argues that this claim is duplicative because it simply asks the Court to make the same determinations it must make to evaluate the statutory and breach of contract claims. The Court agrees. As an initial matter, a declaration of rights is typically a form of relief rather than an independent cause of action. *See Builders Ass'n of N. Nevada v. City of Reno*, 776 P.2d 1234, 1234 (Nev. 1989) ("The Uniform Declaratory Judgments Act does not establish a new cause of action … Instead, the Act merely authorizes a new form of relief, which in some cases will provide a fuller and more adequate remedy than that which existed under common law."). *See also Fung Ying Leung v. Mortg. Elec. Registration Sys., Inc.*, No. 2:12-CV-1393 JCM VCF, 2013 WL 237225, at *6 (D. Nev. Jan. 22, 2013) ("[D]eclaratory relief is not an independent cause of action … [m]oreover, the declaratory relief 'claim' fails because it is duplicative and only asserts violations alleged in the other causes of action already contained in the complaint.")

In evaluating the breach of contract claim the Court will necessarily provide a judicial declaration about whether Sierra Nevada has complied with the Distribution Agreement and relevant statutes. Therefore, Sierra Nevada's Motion is granted and Crown's vestigial declaratory relief claim is dismissed.

## IV. CROWN'S OBJECTIONS TO THE MAGISTRATE JUDGE'S MARCH 1, 2017 ORDER

At a hearing before the Magistrate Judge on March 1, 2017 ("March Hearing"), the parties addressed several discovery disputes, and the Magistrate Judge made oral rulings. Pursuant to LR IB 3-1, Crown objects to four (4) of the Magistrate Judge's rulings.

///

///

## A. Legal Standard

Magistrate judges are authorized to resolve pretrial matters subject to district court review under a "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a); LR IB 3-1(a) ("A district judge may reconsider any pretrial matter referred to a magistrate judge in a civil or criminal case pursuant to LR IB 1-3, where it has been shown that the magistrate judge's ruling is clearly erroneous or contrary to law."). This standard of review is significantly deferential to the initial ruling. "A finding is clearly erroneous when although there is evidence to support it, the reviewing body on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Ressam*, 593 F.3d 1095, 1118 (9th Cir. 2010) (quotation omitted). "A decision is 'contrary to law' if it applies an incorrect legal standard or fails to consider an element of the applicable standard." *Conant v. McCoffey*, C97–0139, 1998 WL 164946, at *2 (N.D.Cal. Mar.16, 1998). A magistrate judge's pretrial order issued under 28 U.S.C. § 636(b)(1)(A) is not subject to *de novo* review, and the reviewing "may not simply substitute its judgment for that of the deciding court." *Grimes v. City & Cnty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991).

## B. Deposition of Brewmaster Steve Dressler

Sierra Nevada, who had originally objected to Crown's request to depose its brewmaster, Steve Dressler, asserts that it dropped any objection on March 28, 2017. It has produced an email exchange between counsel for the parties in which Sierra Nevada's counsel informed Crown's counsel that Sierra Nevada no longer objected to the taking of Dressler's deposition. (ECF No. 77-8 at 4.) In light of this development there is no longer a dispute for the Court to address.

## C. Request for Production Number 21

Crown requested Sierra Nevada's "internal communications discussing, and external communications with, other wholesalers for Sierra Nevada within the marketing areas of Nevada and California regarding all billing irregularities and errors made by those other wholesalers from [2012] to present." (ECF No. 71 at 10.) At the March Hearing,

Sierra Nevada objected to Crown's request, and Judge Cooke ruled that the request was overly broad and burdensome. (ECF No. 73 at 34-58.) Judge Cooke concluded that because the claims are based on NRS Chapter 597, the only other wholesalers that would be relevant to a good cause determination are other wholesalers as defined by the statute — that is, other Nevada wholesalers. (*Id.* at 57.)

Crown argues that Judge Cooke was mistaken because the discovery was relevant, and further that the decision was procedurally improper because Sierra Nevada's arguments were raised for the first time at the hearing. Crown offers its own statutory argument, and argues that because Sierra Nevada compared Crown's performance to other wholesalers in its region (which includes Northern California and Northern Nevada), information about other wholesalers' errors is relevant to a determination of good cause.

NRS § 597.160(2) requires good cause for a brewer to terminate a contract with a wholesaler. NRS § 597.133(1) in turn defines good cause as "[f]ailure by a wholesaler to comply substantially with essential and reasonable requirements imposed on him or her by a supplier, or sought to be imposed by a supplier, if the requirements are not discriminatory as compared with requirements imposed on other similarly suited wholesalers with by their terms or in the manner of their enforcement." Citing NRS § 597.150, Sierra Nevada argues that because the statute elsewhere defines "wholesaler" as "any … business enterprise licensed by the Nevada Tax Commission to sell malt beverages, distilled spirits and wines, or all of them, as it is originally packaged to retail liquor stores or to another licensed wholesaler," wholesalers outside of Nevada are by definition not relevant to the Court's analysis. Crown counters that NRS § 597.120's caveat–that statutory definitions apply "unless the context otherwise requires"—applies in this case because Sierra Nevada itself has compared Crown's performance to wholesalers in California.

Setting aside the statutory dispute, the Court finds that the Magistrate Judge acted within her discretion under Rule 26 — which gives the Court broad discretion to tailor discovery as it sees fit. *See Crawford-El v. Britton*, 523 U.S. 574, 599 (1998). Indeed, the

1  scope of discovery is limited to information relevant to a party's claims or defenses "and
2  proportional to the needs of the case" in light of certain factors, including "whether the
3  burden or expense of the proposed discovery outweighs its likely benefits." Fed. R. Civ.
4  P. 26(b)(1). Given the expedited discovery and trial schedule, Sierra Nevada has shown
5  the request, which would involve obtaining and reviewing thousands of documents from
6  26 additional wholesalers, would be unjustifiably costly and time consuming. Sierra
7  Nevada also notes that Crown could have obtained information about other wholesalers'
8  billing irregularities during one of several depositions wherein Crown inquired about billing
9  issues. The Magistrate Judge thus acted within the boundaries of her Rule 26 discretion
10 in denying Crown's request.[1]

### D. Requests for Production Numbers 50, 51, 52

Sierra Nevada requested Crown produce its tax returns, balance sheets, and profit and loss statements dating back several years in order to evaluate the claimed damages. Crown objected to the request as unlikely to lead to the discovery of admissible evidence. Judge Cooke found a compelling need for the production of the documents, but limited the request to the period covering 2012 to the present. (ECF No. 73 at 72-82.) Crown argues that even five years of financial history is overbroad under the Court's prior rulings, and its tax returns should not be disclosed at all. In support, Crown cites a number of cases in which courts have limited financial discovery to two or three years.

However, as Sierra Nevada demonstrates, there is no hard and fast rule about the length of time for which a court may allow discovery of financial information. Courts, including this one, routinely grant requests for five years of financial information in similar circumstances. *See, e.g., Wynn Las Vegas v. Zoggolis*, No. 2:14-CV-15-MMD-VCF, 2014 WL 2772241, at *4 (D. Nev. June 17, 2014). The Magistrate Judge did not clearly act

///

---

[1] Though the Court finds that the Magistrate Judge did not commit clear error or abuse her discretion, this finding leaves open the disputed statutory issue — whether Sierra Nevada's treatment of certain California wholesalers is relevant to a good cause analysis in this case.

erroneously or contrary to law when she compelled Crown to produce 5 years of balance sheets and profit and loss statements in response to Requests for Production 51 and 52.

After Sierra Nevada argued it did not have the means to calculate Crown's lost market share, good will, and profits without access to Crown's tax returns, the Magistrate Judge concluded that it had shown a compelling need for Crown to produce its tax returns, and further that the information was not otherwise available. (ECF No. 73 at 81.) Crown argues this conclusion was simply incorrect and that Sierra Nevada could ascertain the information they need through their own technology and the discovery that has already been produced. The Court finds that the Magistrate Judge had a sufficient basis on which to conclude that Sierra Nevada has a compelling need for Crown's tax returns, and that her decision to compel Crown to respond to Request for Production 50 was neither clearly erroneous nor an abuse of discretion.

### E. Third-Party Subpoenas

Finally, Crown requested that the Magistrate Judge limit or otherwise preclude Sierra Nevada's proposed subpoenas to third parties Anchor Brewing Company LLC and Alaskan Brewing LLC. The Magistrate Judge concluded that the subpoenas were appropriate and allowed them to proceed. (ECF No. 73 at 82-83.) Crown objects to the Magistrate Judge's ruling.

Though the parties dispute whether the subpoenas will produce any information relevant to a good cause determination, Sierra Nevada argues that they are also relevant to an analysis of Crown's claimed damages. Specifically, Sierra Nevada points to Crown's allegations that Sierra Nevada has caused it to suffer "lost profits, loss of market share, and loss of goodwill." (ECF No. 77 at 18.) Sierra Nevada argues that the subpoenas may show that Crown has lost market share and goodwill as a result of its own actions, and not as a consequence of Sierra Nevada's behavior.[2]

---

[2] Sierra Nevada proposed limiting the requests to communications concerning threatened or actual termination or complaints about Crown, but Crown elected to maintain their objection that the subpoenas as a whole were outside the scope of Rule 26. (ECF No. 77-7.)

13

The Court finds that Sierra Nevada has identified sufficient reasons to support the issuance of the subpoenas, and that the Magistrate Judge acted within her discretion in approving and refusing to limit them.

**V. CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion or Objections.

Accordingly, it is hereby ordered that Sierra Nevada's Motion to Dismiss (ECF No. 25) is granted in part and denied in part. The Motion is granted with respect to Crown's fifth, sixth, and seventh claims for relief. It is denied with respect to Crown's third and fourth claims for relief.

It is further ordered that Crown's Objections to the Magistrate Judge's March 1, 2017, pretrial rulings are overruled.

DATED THIS 26th day of April 2017.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE